UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

KENNETH G. GERING

      Plaintiff,

Vs.

[FILED MAR 15 2018 — Stephen C. Dries, Clerk, U.S. District Court Wisconsin Eastern]

Case No._____

PAUL KEMPER, Warden RCI
VASQUEZ, k  Health Service Manager
FRAZIER, L  Assistant Health Service Manager
BRADY,    Nurse Clinician ( NC 2)
DELANEY, KELLY  Medical Program Associate Assist  (MPAA)
JOHN and JANE, DOE,  Offsite Schedulers

      Defendant,

---

## VERIFIED CIVIL RIGHT COMPLAINT
## WITH A JURY DEMAND

---

1.    This is a title 42 U.S.C. § 1983 action filed by Kenneth G. Gering, a State prisoner, for monetary damages and injunctive relief for failure to provide Medical Care in a timely manner, in violation of the Eighth and Fourteenth Amendment to the United States Constitution

### JURISDICTION

2.    This Court has jurisdiction over the Plaintiff's claim pursuant to 28 U.S.C.§ 1331 and 1343, and plaintiff's claims for injunctive and monetary relief are authorized by 2283 and 2284 and rule of Fed Civ P.1.

### EXHAUSTION OF AVALABIL REMEDIES

3.    Plaintiff exhausted all his administrative remedies as required by PLRA Laws before filling this complaint

1

## PARTIES

4. Plaintiff, <u>Kenneth G. Gering</u>, Is a citizen of the U.S. of America and was at all times relevant, herein an inmate of the Division of Corrections, Racine, in the State of Wisconsin, domiciled at P.O. Box 900 Sturtevant WI 53177-0900, during the events described in this complaint.

5. Defendant, <u>Paul Kemper,</u> at all times relevant, was acting Warden at Racine Correctional Institution, he is legally responsible for the overall operations, and welfare, health and safety of all inmates and staff, whose address is Racine Correctional Institution 2019 Wisconsin St. Sturtevant WI 53177-1829, in the County of Racine, and is sued in his professional and his individual capacity

6. Defendant, <u>Vasquez , K</u> at all relevant times was the acting Health service Manager at R.C.I. who is ultimately responsible for staff, and staff to inmate treatment and health care at R.C.I. Whose address is Racine Correctional Institution 2019 Wisconsin St. Sturtevant WI 53177-1829, in the County of Racine, and is sued in her professional and her individual capacity

7. Defendant, <u>Laura Frazier</u> at all relevant times was the acting Assistant Health service Manager at R.C.I. who is ultimately responsible for staff and staff to inmate treatment and health care at R.C.I. Whose address is Racine Correctional Institution 2019 Wisconsin St. Sturtevant WI 53177-1829, in the County of Racine, and is sued in her professional and her individual capacity

8. Defendant <u>Kelly Delany,</u> at all relevant times was the Medical Program Associate Assist (MPAA) who dose the scheduling of offsite appointments to specialty clinic's, on Doctors Orders , Whose address is Racine Correctional Institution 2019 Wisconsin St. Sturtevant, WI. 53177-1829, in the County of Racine, and is sued in his professional and his individual capacity

9. Defendant <u>JANE and JONE DOE,</u> at all relevant times was the Medical Program Associate Assist (MPAA) who dose the scheduling of offsite appointments to specialty clinic's, on Doctors Orders , Whose address is Racine Correctional Institution 2019 Wisconsin St. Sturtevant, WI. 53177-1829, in the County of Racine, and is sued in his professional and his individual capacity

10. Defendant, <u>Brady (NC 2)</u> at all relevant times was personally involved was consulted by Inmate Complaint Examiner (ICE) in reviewing plaintiffs medical records and his complaint of

excessive delays in his health care.  Whose address is Racine Correctional Institution 2019 Wisconsin St. Sturtevant WI 53177-1829, in the County of Racine, and is sued in his professional and his individual capacity

## FACTUAL STATEMENT

11. There are (2) two serious medical issues in this complaint with the same defendants, same place, same time line, separated to eliminate any confusion, they both deal with unnecessary prolonged delay to serious medical need.

    **A.** A seriously painful back condition of plaintiffs
    **B.** A acute foot condition of plaintiffs

## A. A seriously painful back condition of plaintiffs

12. On 3-30-00, I was diagnosed with a lower back condition, spondylolisthesis.

13. On. 3-7-14. after complaining of serious lower back pain at NLCI, a new MRI diagnosed me with a grade 2 isthmic spondylolisthesis at U.W Health Ortho M.D. Andrew Indesano.

14. On 12-14-16, I complained of serious back pain at RCI I was seen by M.D. Miloslavic (Prison Doctor) who reviewed Plaintiffs medical records and the report from U.W. Health, Madison, and Ordered to send plaintiff back to U.W. Health to Doctor Indesano to see about steroid Injections in the back. The report was from when I was housed at New Lisbon Corr, Inst.

15. On 12-14-16 M.D.. Miloslavic filed a DOC 3001 offsite service request

16. On 12-14-16 M.D. Miloslavic and the I, felt the back was so aggravated from walking on the side of plaintiffs right foot for so long to compensate for the pain in his foot.

17. **<u>5 months after Dr. Miloslavic's 12-14-16 Order to send Plaintiff to U.W Health</u>**.

18. On 5-2-17, after numerous Health Service Request( hereafter HSR) I went off site to Wheaton Franciscan Health care (hereafter WFH) to Ortho for sever back pain and was seen by M.D. Clearfield, who started over to rediagnose me he requested a new M.R.I. before pursuing epidural steroid injections, also recommended a back brace, Medication for the pain (cyclobenzaprine for 21 days) follow up 6 weeks

19. On 6-12-17, I submitted HSR requesting pain medication cyclobenzaprine renewed as the 21 day's ran out. staff responded to HSR stating "Doctor Krembs is sending you offsite for

3

Diagnostic test on your feet to see if you meet criteria for long term cyclobenzaprine". This response made no sense. The cyclobenzaprine is a muscle relaxer for my back

20. For the next 2 months I sent HSR after HSR about medication and the back pain, and wanted to know when a MRI was going to be scheduled.

21. On 7-30-17, I demanded to see the Prison Doctor.

22. **2 months** after Medication cyclobenzaprine ran out and **3 months 2 weeks** after offsite M.D. Clearfield requested the M.R.I.

23. On 8-18-17. RCI M.D. Krembs, see's me, Ordered cyclobenzaprine for 6 months and Ordered MRI for lower back. Then send to pain Management.

24. **3 Months** after M.D. Krembs Ordered MRI on 8-18-17 and **6 months 2 weeks** after MRI was requested by M.D. Clearfield.

25. On 11-13-17, I went offsite to WFH had MRI completed.

26. After M.D. Krembs reviewed the MRI report from WFH, he Ordered to send me back offsite to Ortho M.D.. Clearfield.

27. It took **7 days** after M.D. Krembs 11-13-17 Order MRI.

28. On 11-20-17, I went back offsite to WFH Ortho M.D. Clearfield explained the diagnoses, as Degenerative change of the lower lumbar spine including grad ½ antero listhesis of L5 on S1 with bilateral L5 par defect with resulting in sever right and moderate sever left neural foramina stenosis causing bilateral L5-S1 radiculopathies M.D. Clearfield gave the OK for Steroid Injections and recommended Medication for radicular pain and referred to Pain Management Clinic WFH.

29. It was 12-14-16 When M.D. Miloslavic Ordered to see a specialist, I had been in sever back pain, and it took 1 Year to rediagnose Plaintiff back as worse.

30. On 11-30-17 RCI, M.D. Kremb Ordered, to send me to Pain management per M.D. Clearfield consult. Follow up in 2 weeks after injections.

31. NOTE M.D. Krembs had ordered pain management in past 8-18-17

32. On 12-6-17. I filed HSR, requesting to know why HSU is delaying scheduling offsite appointments? Staff replied "It take some time to schedule"

33. Note; Back on 11-13-17, it took only 7 days to schedule a appointment with Ortho.

4

34. On 12-6-17, Filed a HSR to unit manager requesting to know why RCI HSU delaying my medical attention why/ This has been going on for a year. Staff replied, The Doctor reviewed the record, he did not order a follow up at this time."

35. HSU Manager did not even respond to the issue of delayed scheduling of appointments.

36. On 1-12-18 I filed a DOC 400 INMATE COMPLAINT, based in the same issues in this statement of facts.

37. **2 months 1 week** after M.D. Krembs 11-30-17 Order to send to pain management.

38. On 2-1-18, I, went offsite to WFH to pain management for a consult that took about 10 minutes.( and no steroid injections yet)

39. On 2-12-18 ICE dismissed my Inmate Complaint, stating There is no indication the treatment offender is not adequate to the demonstrated need" This was consulted to by the Frazier ,Brady and e-mailed to HSU Manager Vasquez, K

40. ICE did not even address the issue of the excessive delayed in offsite appointments this is what the ICE was about.

41. On. 2-13-18 Wrote RCI Warden regarding the same issues in this complaint.

42. On. 2-13-18 appealed the ICE response that the ICE did not even address the issues of excessive delay in care /treatment.

43. On. 2-28-18 Appeal was dismissed

44. On. 2-20 2018 I submitted a HSR requesting to know if a appointment was made for pain management. Staff K Delany replied on 2-27-18 appointment was scheduled

45. As of this date I still have not went to pain management got steroid injections

46. On 3-7-2018 Warden Kemper replied to 2-13-18 Letter, he spoK to HSU Management who reviewed my Health file. Kemper did not respond to any issus of exessive delay's in health care.

### B. A acute foot condition of Plaintiffs

47. On or about 10-10-16, I submitted HSR at RCI, complaining I was in great pain in my right foot, and could hardly walk on it. Staff first diagnosed as Gout, RCI MD. Krembs prescribed Turadol for the pain (shots) for 3 days and Ibuprofen 600 for pain.

5

48. On 11-17-16, I again complained to HSU, I was in great pain in my foot and could hardly walk on it, M.D. Kremb again Ordered Turadol for 3 days for the pain, <u>I had also requested a Cain or Crutches, and was turn down.</u>

49. On 10-31-16, I again complained to HSU of the extreme pain in my foot and stated that I did not think it was Gout.

50. On 11-7-16. I again complained to HSU of extreme pain in my foot.

51. On 11-14-16. I was seen by RCI M.D. Miloslavic, Ordered uric acid test and prescribed Indomethacin. (Uric acid test came back normal)

52. On 11-29-16, I again complained to HSU and made it clear I was in a lot of pain.

53. On 12-14-16, M.D. Miloslavic Ordered X-ray for my right foot. Radiology report x-Ray was Normal.( The x- ray was taken at Racine Corr, Inst.)

54. On 1-14-17, I again complained to HSU of extreme pain in my Right foot and needed more cushion on right foot, the nurse gave me a ace bandage.

55. On 2-21-17, I filed a HSR stating I was in pain in my Foot, see M.D. Miloslavic Ordered another Uric acid test. (Came back normal)

56. On. 3-28-17, after numerous complaints to HSU. I saw M.D. Miloslavic and he at this point doubt plaintiffs issue was Gout, he reordered Ibuprofen, and Ordered **"Need to see Podiatrist"**, also ordered shoe supports for cushion and lower tear.

57. On 3-31-17, I received the shoe supports from HSU.( which did not help)

58. On 4-11-17, I filed a HSR requesting to know if a outside appointment had been made for my foot, HSU replied, " It is in the possess of being scheduled" (which was not a fact)

59. On 6-3-17 I filed HSR requesting to know if I will see the Podiatrist.

60. Staff responded " the Doctor is reviewing your chart to determine need for podiatrist appointment"

6

61. **2 Months** after M.D. Miloslavic, 3-28-17 Order to send to Podiatrist.

62. On 6-6-17, M.D. Kremb Ordered a, EMG/NCS looking for Tarsal Tunnel of the right Foot.

63. **4 Months** after 3-28-17 Order to send to podiatrist by M.D. Miloslavic.

64. On 8-10-17, I went offsite to WFH for a EMG/NCS test, which concluded that Possible Tarsal Tunnel of the right Foot.

65. On 8-19-17, **M.D. Kremb again ordered to consult with Dr. Larson, Podiatrist.**

66. **8 Months** after M.D. Miloslavic 3-28-17 order, and, **3 months** after M.D. Kremb 8-14-17 to see Podiatrist.

67. On 11-20-17, I go offsite to WFH had two appointments that day the first was to see M.D. Larson Podiatrist, got there and no appointment, and had to reschedule appointment.

68. On 12-1-17, I filed HSR requesting to know if appointment was rescheduled for Podiatrist Staff response was "appointment not seen on your chart".

69. On 12-6-17 I submitted HSR stating I was still in a lot of pain with my foot, and why hasn't a appointment been made in a timely manner.

70. On 12-7-17, I was called down to HSU, Nurse Herrington told me she would look in to it, and stated they are way behind on the scheduling, I stated I quit my job because my foot hurt so bad, and the pain was sharp.

71. **9 months** after M.D. Milosevic's 3-28-17 Order and **5 months** after M.D. Kremb Order to see the Podiatrist.

72. On 1-4-18, I went offsite to WFH, seen by M.D. Larson "Podiatrist" he takes 3 X-Rays of my right foot, he determined that my symptoms were not directly related to tarsal tunnel syndrome, Dr. Larson assessment which was concurred by MD Olson Radiologist WFH was.

   1). Nondisplaced **Fracture** 2nd metarsal base right foot.
   2). **Fracture** fibular sesamid right foot

7

I was placed in a cam boot to help immobilize the area fractured, he also expects a MRI on the right foot my be required and the Fibular sesamid bone may need to be surgically excided do to the level of commination. Follow up in 3 to 4 weeks.

73. On. 1-7-17 I filed a ICE on the same issues that I have presented in this complaint. Excessive delays to my serious medical need and that I was In serious pain for over a year, as it turns out I had 2 fractures in my right foot, and could not even get a Cain or a crutch.

74. On 1-25- 18 went offsite to WFH saw M.D. Larson added 3 to 4 more weeks in the boot.

75. On 2-22-18 went offsite to WFH saw M.D Larson added 3 to 4 more weeks in the boot. As of this date still in the boot

## CLAIMS FOR RELIEF AGANST DEFENDINTS

### Deliberate Indifference to serious Medical need

76. Defendants, Kemper, Vasquez ,K Frazier ,L Delaney, K Brady NC 2 **All had actual Knowledge** that Plaintiff had a serious medical need and the Medical care system at RCI, namely the practice of excessive delay's with scheduling necessary offsite medical appointments for the Plaintiff, not even considering the seriousness of the medical need, The pain I was in the whole time, that is why M.D Ordered a specialist to see me, my Health records are full of this information, this is a objectively cruel condition for the plaintiff, I and others have wrote directly to or threw the "Inmate Complaint System" (ICE), and defendants Brady NC2 Vasquez ,K Frazier consulted and reviewed the ICE, warden Kemper was informed by me by way of a letter, and I know other inmates have complained of the same issue, with no reasonable response or change in there practice. The pain and suffering I endured at times was unbearable. This is Deliberate Indifference to a serious medical need.

77. Defendants, Warden Kemper, Health Service Manager Vasquez ,K Assistants Health Service Manager Frazier ,L Are responsible **for having sufficient Health Service staff** to assure that the overall system is functioning properly to meet the needs of the large population of RCI,

systemic deficiencies in staffing the facilities and this procedure, which makes unnecessary suffering inevitable, I was told by staff they don't have the staff to keep up with processing the offsite Ordered by the M.D. This Constitutes Deliberate Indifference. Plaintiff suffered every day with pain, because there is not sufficient qualified staff to process necessary offsite appointments in a reasonable timely matter. This is Deliberate Indifference to a serious medical need.

78. Defendants, Kemper, Vasquez ,K Frazier ,L Brady  NC 2  **Have a Dysfunction in there Medical program** which amounts to deliberate Indifference , If it prevents this plaintiff, and other inmates from receiving necessary care in a timely manner as did this plaintiff . I complained of chronic documented back pain on 12-14-16, Doctor Order to send plaintiff back to UWH Madison where they had in the past treated plaintiff for back pain while at New Lisbon Corr. and discussed looking in to steroid injections. But RCI HSU staff disregarded this Order and put me through delay after delay taking **5 months** just to send me to another Hospital to save money, and start all over to rediagnose me, It has taken from **12-14-2016** M.D. Order, and still to the date of the filing of this complaint have not received the epidural injections, more than a year and the months of responses from HSU you can't even read or some response that don't even make since. I had to deal with the pain and suffering, because of all the dysfunctions of the RCI Medical program.

79. Secondly, On. 10-10-2016, I complained of extreme pain in my foot, after excessive delay with a misdiagnosed  another Doctors orders another procedures, then again 5 months after the first Doctors order to see podiatrist another Doctor orders to see a podiatrist again , which takes another **5 months** to see, Then to find out I had been walking on 2 fractures in right foot, HSU would not even give me a Cain  or crutch, the Podiatrist suspects fracture on the 2nd metarsal base right foot may have been caused by walking on the side of the right foot for over 1 year, compensating for the pain from the fibular sesamid fracture. These seriously painful conditions interfered with my normal daily activities even had quit his job for three months because of the pain. The delays caused unbearable pain and suffering with a lot of mental anguish for over a year. This is Deliberate Indifference to a serious medical need.

80. Defendant, Delany, K John doe and Jane Doe, Medical Program Associate Account (MPAA) who oversee and or assists in the scheduling of offsite medical appointments at RCI. They know I and other inmates have serious medical needs as they see my Health records if they are making the appointments, they know what kind of condition I am in, I still have to sometimes wait 1 to 5 months for scheduling offsite appointments to specialty clinics. These Defendant also have a practice of priority scheduling appointments ahead of other inmates in need, as was done with me on one (1) occasion, where it took only 7 days to schedule a offsite appointment, **only 7 days** other times it is 1 to 5 months, Theses delayed practices kept plaintiff and others inmates from getting to see needed medical staff in a timely manner, while in pain the whole time. This <u>interferes with needed care and treatment that has been prescribed</u>. This is Deliberate Indifferent.

81. Defendant, Brady NC 2 Vasquez ,K Assistants Health Service Manager Frazier were ether Questioned By the Inmate Complaint Examiner (ICE) or were sent copies for their review, regarding the issues in this complaint that were on the plaintiffs Inmate complaint and ignored the issues of excessive delay in Plaintiff's offset appointments, These defendants chose not even addressed as if it was not even there. This is Deliberate Indifference to a serious medical need

82. Continuous delays in scheduling offsite appointments as much as 1 to 5 months as with me caused a risk of the kind of harm that happened to me the excruciating pain I lived with is well documented in his medical records. If a M.D had Ordered plaintiff to a offsite specialist and there is no consideration of assessing the need or pain Plaintiff is in can cause further harm as with plaintiff, This is Deliberate Indifference to a serious medical need to Plaintiff in pain.

## LEGAL THEORY OR CITES APPROPRITE ATUTHORITY

83. A cause of action under 42 U.S.C. § 1983 has two elements (1) the defendant acted under color of state law; (2) their actions deprived plaintiff of a Constitutional right. Parrett v. Taylor 101 S.Ct. 1908 (1981) The record reflects that the defendants in the instant case, while acting as state employees, were clearly acting under "color of State law" State Bank v. Camic 712 F.2d, 1140, (7th Cir 1983)

84. It must now be directed to the issue of whether the defendant allegedly infringed upon plaintiffs Constitutional Rights

All prison inmates have a constitutional right to be protected from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

85. The U.S. Supreme Court has held that the Eighth Amendment prohibition of cruel and unusual Punishment, made applicable to the states by the Fourteenth Amendment, prohibits the unnecessary and wanton infliction of pain that may be occasioned by a jailer's indifference to the serious medical need of inmates. Estelle v. Gamble, 429 U.S. 97, 104 (1976. The indifference may be "manifested by prison doctor in their response to the prisoner's need or by prison staff in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id.

86. Thus in order to state a cognizable claim for an Eighth Amendment violation in the area of medical treatment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical need," Id. at 106.

87. As with other Eighth Amendments claims, the defendant indifference standard requires a plaintiff to show that the defendants had actual knowledge of an objectively cruel condition ( in medical cases, a serious medical need) and did not respond reasonably to the risk. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.C.t 1970 (1994) Johnson v. Mullin 422 F.3d 1184, 1187, (10th Cir 2005) The seriousness of a medical need, is determined by factors including but not limited to "(1) whether a reasonable doctor or patient would perceive the medical need in

question as important and worthy of comment or treatment; (2) whether the medical condition significantly affected daily activities, and (3) The existence of chronic and substantial pain" Brock v. Wright, 315 F.3d 158, 162 (2nd Cir 2003)

88. A prisoner who is needlessly allowed to suffer pain when relief is readily available, as in the instant case, does have a course of action against those whose deliberate indifference is the cause of his suffering. See Fitzke v. Shappell, 468 F. 2d. at 1076 n.4 (6th. Cir. 1972) ; Jones v. Lockhart, 484 F. 2d. at 1194; Corby v. Conboy, 457 F. 2d. at 254; also Pinon v. Wisconsin, 368 F. Supp. 608 (E. D. Wis. 1973)

89. Plaintiff's delayed medical care and treatment exacerbated plaintiffs acute conditions ( 2 Fractures of the foot, he walked on the side of his foot for over a year and medical staff was well aware of the condition and pain I was in. (1) Fracture may have accord from walking on the side of his foot, this painful condition caused unbearable and unnecessary and unwanted pain and suffering and mental anguish, this was deliberate Indifference Gayton v. Macoy 595 F. 3d. 610 (7th Cir 2010) Edward v. Snyder 478 3d. 827 832 (7th Cir 2007). Defendants in high levels can be held deliberate indifference based on their knowledge of deficiencies in medical care system Bass v. Wallenstein 769 F. 2d. 117 1184-86 (7th Cir 1995) Proof of staffing or procedural deficiencies may give rise to finding of deliberate indifference.

90. Plaintiff has alleged that he was forced to endure a long periods of intense discomfort because of long excessive delays in medical treatment. He should have the opportunity to prove the truth of his allegations at an evidentiary hearing.

91. The totality of the acts of the Defendants subjected plaintiff to cruel and unusual punishment in violation of the Eighth and the Fourteenth Amendment of the United States Constitution and show deliberate indifference towards plaintiff and caused plaintiff pain and suffering. Defendant should be directed to respond to Plaintiffs complaint and should the trier of fact conclude that plaintiff accusations are true; the District Court is empowered to grant complete relief.

12

## RELIEF REQUESTED

WHEREFOR, Plaintiff respectfully prays this court to:

a) Permanently enjoin the defendants, there agents, assistance, successors, employee and persons acting in concert or cooperation with them from further violating the rights, privileges and immunities guaranteed to the plaintiff under the constitution of the United States of America;

b) Grant compensatory damages to plaintiff in the sum of, Eight Thousand dollars,

c) Grant punitive damages in the sum of, Five Thousand dollars,

d) Grant such other relief as it may appear that plaintiff is entitled, including cost of this action and reasonable attorney's fees

e) A Jury trial demand on all matters at controversy.

In addressing any pro-se litigant complaint, the court must consider the complaint liberally, HINES V. KERNER 404 U.S. 159
And grant leave to proceed if there is an arguable basis for a claim in fact or law NEITZKE v. WILLIAMS
For the forgoing reason, plaintiff makes demand for trial against defendants and all of them pursuant to F.R.C.P. 38

Dated this _13_ day of _March_ .2018

Respectfully Submitted,

Kenneth G. Gering 147339
Pro-se Plaintiff,
P.O. Box 900
Sturtevant WI 53177-0900



STATE OF WISCONSIN
DEPARTMENT OF JUSTICE

DJ-LS-22, rev12/2016

BRAD D. SCHIMEL
ATTORNEY GENERAL

Paul W. Connell
Deputy Attorney General

Delanie M. Bruer
Chief of Staff

17 W. Main Street
P.O. Box 7857
Madison, WI 53707-7857
www.doj.state.wi.us

Betty Kruse
Paralegal
kruseel@doj.state.wi.us
608/267-2780
FAX 608/267-8906

<u>Instruction To Offender</u>: You must send original Certification to the Court.

# CERTIFICATION
## AS TO THREE OR MORE DISMISSALS
## UNDER WIS. STAT. § 801.02(7)(d)

**OFFENDER NAME:** Kenneth G. Gering

**WI DOC OFFENDER NUMBER:** 147339

**THE UNDERSIGNED CERTIFIES THAT:**

__X__  The Wisconsin Department of Justice has no records showing that this offender has three or more dismissals within the meaning of Wis. Stat. § 801.02(7)(d).

_____  The Wisconsin Department of Justice has records it believes show that this offender has three or more dismissals within the meaning of Wis. Stat. § 801.02(7)(d). These records are public records within the meaning of Wis. Stat. §§ 908.03(8), 909.015(7), and 909.02(4), in that they are on file in the offices of the Wisconsin Department of Justice, reflect the activities of that Department, and set forth matters observed by that Department pursuant to duty imposed on it by law. True copies of these records are attached hereto and their case name, number, and venue are as follows:

Attached hereto is a true copy of the offender's request for this certification, bearing the Department of Justice date stamp.

Witness under my hand and the official seal of the Wisconsin Department of Justice, Office of the Attorney General, this 5th day of March, 2018.

/Travis J. Gresham